IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER JAY SCAPEROTTA, #A6083262,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>WARDEN NEAL WAGATSUMA, *et al.*,<br><br>　　　　　Defendants. | CIVIL NO. 20-00551 JAO-RT<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

## <u>ORDER DISMISSING COMPLAINT WITH</u><br><u>PARTIAL LEAVE TO AMEND</u>

Before the Court is Plaintiff Christopher Jay Scaperotta's ("Scaperotta")

prisoner civil rights Complaint[1] brought pursuant to 42 U.S.C. § 1983 and the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213.

ECF No. 1.  Scaperotta names Defendants Warden Neal Wagatsuma and the Kauai

Community Correctional Center ("KCCC") in their official capacities.  Scaperotta

is no longer incarcerated.  *See* ECF No. 16.  For the following reasons, the

---

[1]  The Complaint includes both Scaperotta's December 11, 2020 original filing, ECF No. 1, and the "Addendum to CV20 00551 JAO RT" that the Clerk's Office received and filed on February 4, 2021, ECF No. 12.

Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), with

partial leave granted to amend.

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).[2]

*See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

---

[2]  Although Scaperotta is no longer incarcerated, *see* ECF No. 16, 28 U.S.C.
§ 1915A(a) still applies because Scaperotta was a prisoner when he filed the
Complaint.  *See Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 (9th
Cir. 2017) (per curiam) ("[A] court may screen a complaint pursuant to 28 U.S.C.
§ 1915A . . . if, at the time the plaintiff files the complaint, he is [a prisoner].").
Section 1915(e)(2) applies because Scaperotta is proceeding in forma pauperis.
*See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection
1915(e) applies to all in forma pauperis complaints, not just those filed by
prisoners.").

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a

claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>SCAPEROTTA'S CLAIMS</u>[3]

Scaperotta alleges in Count I that he had a "medical memo" authorizing his use of a wheelchair for one month when he arrived at the KCCC in February 2020. ECF No. 1 at 5.  During his third day at the KCCC, an unidentified prison official allegedly took away Scaperotta's wheelchair.  *Id.*

According to Scaperotta, the memo also stated that he should not sleep on either the floor or a top bunk.  *Id.*  These limitations applied "indefin[ite]ly."  *Id.* On the same day the wheelchair was taken away, an unidentified prison official allegedly moved Scaperotta to a cell where he was required to sleep on the floor each night for two and a half weeks.  *Id.*  After Scaperotta moved to another housing module, he showed prison officials the memo and he was permitted to use a wheelchair.  *Id.*  Three days later, another unidentified prison official allegedly took the wheelchair away from him.  *Id.*

Scaperotta claims that he asked unnamed prison officials at unspecified times for an "accommodation form," use of a handicapped toilet, use of a

---

[3]  Scaperotta's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

handicapped shower, and "medical attention [and] treatment," but these requests went unanswered.  *Id.*

Scaperotta claims that he had a "medical memo" allowing him to use a second mattress and pillow, and to have a water bottle, but unnamed prison officials removed these items.  *Id.*  Finally, Scaperotta claims that a "medical memo for Barrett's cancer"[4] authorized him to keep a water bottle bedside, but unidentified prison officials removed it.  *Id.*

According to Scaperotta, he injured his neck and back getting up and down when he was forced to sleep on the floor.  *Id.*  He claims he suffered "[t]hroat damage" because he was not allowed to keep a water bottle bedside.  *Id.*  He also claims that he hurt his back because he could not use an accessible shower.  *Id.*  Scaperotta also claims that he could not move his bowels without handrails during his initial time at the KCCC, and therefore was "forced to de[s]ist calorie intake

---

[4]  "Barrett's cancer," which is distinct from "squamous cell esophageal cancer," is "adenocarcinoma of the distal esophagus" and is causally linked to "Barrett's esophagus."  Marcus Feith et al., *Pattern of Lymphatic Spread of Barrett's Cancer*, 27 World J. of Surgery 1052, 1057 (2003); J.R. Siewert & H.J. Stein, *Barrett's Cancer: Indications, Extent, and Results of Surgical Resection*, 13 Seminars in Surgical Oncology 245, 246 (1997).  "Barrett's esophagus" occurs when the cells in the lining of the esophagus are damaged from acid reflux.  Johns Hopkins Medicine, The Sidney Kimmel Comprehensive Cancer Center, https://www.hop kinsmedicine.org/kimmel_cancer_center/cancers_we_treat/esophageal_cancer/prev ention/barretts-esophagus.html (last visited Mar. 24, 2021).  The Court therefore construes Scaperotta's Complaint to allege that he has a form of esophageal cancer. If Scaperotta's condition is something other than esophageal cancer, he should specify what it is in any amended pleading that he might file.

and stop eating." *Id.* And he claims that due to constipation, he suffered an "anal fissure tear," a "back muscle spasm/strain/pull/annular tear/nerve impingement/disc damage" and sciatica, such that he has "numbing toes," "condition progressi[o]n, and worsening" with "no examination or treatment." *Id.*

Scaperotta alleges in Count II that, on October 20, 2020, he coordinated for a financial institution to mail him a cashier's check for deposit to his prisoner account. *Id.* at 6. Two days later, however, Scaperotta was transferred to the Oahu Community Correctional Center ("OCCC"). *Id.* Scaperotta claims that unidentified prison officials at the KCCC would not deposit his check or mail it to him. *Id.* Scaperotta claims that his mail was not forwarded from the KCCC to the OCCC except for one mailpiece from the "Disciplinary Council Supreme Court." *Id.* Scaperotta further claims that unidentified prison officials "tampered with" and refused to send his outgoing mail at unspecified times. *Id.*

According to Scaperotta, because of the "lost check" and his transfer to the OCCC, he was deprived of access to the commissary and over-the-counter medicines and personal hygiene supplies (such as "Prep H," hydrocortisone cream, soap, shampoo, lotion, and chapstick). *Id.* Scaperotta claims that without these medicines, his "health [was] failing." *Id.* According to Scaperotta, his medical records describe "internal bleeding," rectal bleeding, blood in his urine, and

bleeding in his stomach.  *Id.*  He also experienced hemorrhoids, cracked and itchy skin and lips, dandruff, and dry eyes.  *Id.*

Scaperotta also claims that Wagatsuma did not allow "Bibles, religious magazines, [and] books" to be mailed into the KCCC.  *Id.*  This deprived "[him] and God of fellowship" and caused his mental health demise such that he was housed in a "mental health p[s]ych ward."  *Id.*

Scaperotta alleges in Count III that, after returning to the KCCC, he was housed in a cell with no "ADA bathroom," "ADA shower," or "special accommodations for a disabled/handicapped person[]."  ECF No. 12 at 1. Scaperotta claims that he needed a toilet with handrails to "get up" from the toilet. *Id.*

Scaperotta seeks $100 million in "restitutional damages and compensatory damages," unspecified "injunctive relief," an "out of court settlement," retraining of staff, and a letter of apology.  ECF No. 1 at 7.

### III. <u>DISCUSSION</u>

A.    **Claims under 42 U.S.C. § 1983**

1.    **Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state

law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

### 2. Eleventh Amendment Immunity

Scaperotta names Defendants Warden Wagatsuma and the KCCC in their official capacities.  ECF No. 1 at 1–2.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v.*

8

*Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.[5]  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Scaperotta's 42 U.S.C. § 1983 claims for money damages against the KCCC and Warden Wagatsuma in his official capacity are barred by the Eleventh Amendment and therefore DISMISSED with prejudice.[6]  *See Rowan v. Dep't of Pub. Safety O.C.C.C.*, No. 1:19-cv-00040 LEK-KJM, 2019 WL 637764, at *2 (D. Haw. Feb. 14, 2019) ("Neither the Hawaii Department of Public Safety (DPS) . . . nor OCCC, a jail, are . . . subject to suit under the Eleventh Amendment." (citation omitted)); *Penque v. Dep't of Pub. Safety*, Civ. No. 20-00338 DKW-WRP, 2020 WL 5984055, at *3 (D. Haw. Oct. 8, 2020) (concluding that claims for monetary damages against prison official in his official capacity were barred by the Eleventh Amendment).

---

[5] As explained *infra*, the Eleventh Amendment does not bar Scaperotta's claims under Title II of the ADA.

[6] Scaperotta's claims against the KCCC are also foreclosed because a prison or correctional facility is not a "person" within the meaning of 42 U.S.C. § 1983.  *See Allison v. Cal. Adult Auth.*, 419 F.2d 822, 822–23 (9th Cir. 1969) (concluding that state prison was not a "person" for purposes of 42 U.S.C. § 1983); *Leong v. Maui Cnty. Comm. Corr.*, No. 1:18-cv-00375 JAO-KSC, 2019 WL 692795, at *2 (D. Haw. Feb. 19, 2019) ("[J]ails, prison facilities, and state agencies are not 'persons' amenable to suit under § 1983.").

Further, although "courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law," *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000), to the extent Scaperotta seeks injunctive relief against Wagatsuma in his official capacity based on conditions at the KCCC, those claims are moot because Scaperotta is no longer incarcerated and he has no reasonable expectation of returning to the KCCC. *See Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot." (citation omitted)). Scaperotta's claims for injunctive relief against Wagatsuma in his official capacity are DISMISSED with prejudice.

Scaperotta may amend his pleading, however, to name a proper defendant or defendants. To the extent Scaperotta seeks damages under 42 U.S.C. § 1983, he must name in his or her individual capacity a defendant or defendants who allegedly deprived him of his rights. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities" (citation omitted)).

10

If Scaperotta decides to file an amended pleading, he should consider the following legal standards outlined in Parts III.A.3 through A.6.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." (internal quotation marks and citation omitted)).

### 3.    Supervisory Liability

Scaperotta names Wagatsuma, the warden of the KCCC, as a Defendant. ECF No. 1 at 1.

"[V]icarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," to plead a plausible claim for relief.  *Iqbal*, 556 U.S. at 676.  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.

A supervisory official may be held liable under 42 U.S.C. § 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted); *see Crowley v.*

11

*Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).  Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Starr*, 652 F.3d at 1208 (internal quotation marks and citation omitted).

Scaperotta appears to name Warden Wagatsuma solely because of his supervisory position at the KCCC.  Scaperotta does not allege that Wagatsuma was personally involved in the alleged unlawful conduct related to the conditions of his confinement or his medical care, had knowledge of and acquiesced to that conduct, or showed a reckless or callous indifference to his rights.  *See* ECF No. 1 at 5–6; ECF No. 12 at 1.  Scaperotta therefore fails to state a plausible claim for damages against Wagatsuma based on the conditions of his confinement or the medical care he received.  *See Aquino v. Hawaii D.P.S.*, No. 17-00300 LEK-RLP, 2017 WL 4574962, at *3 (D. Haw. Oct. 13, 2017) ("To the extent [plaintiff] seeks to hold [the warden] or any prison official liable based solely on their supervisory positions[,] he may not do so.").

4.     **Eighth Amendment—Conditions of Confinement Claim**

Scaperotta claims that the conditions of confinement at the KCCC violated the Eighth Amendment.  ECF No. 1 at 5.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).  In its prohibition on "cruel and unusual punishments," the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]"  *Id.* (internal quotation marks and citations omitted); *see Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

A prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, "sufficiently serious"—that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'"  *Farmer*, 511 U.S. at 834 (some internal quotation marks and citations omitted); *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  Second, the prison official must have

13

a sufficiently culpable state of mind.  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]"  *Farmer*, 511 U.S. at 834 (citations omitted).  Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

Scaperotta alleges that the conditions of confinement at the KCCC violated the Eighth Amendment because prison officials took away his wheelchair, forced him to sleep on the floor, did not provide him with a "2nd mattress and pillow and water bottle," denied him access to an accessible toilet and shower, and refused to provide "reasonable [accommodation]."  ECF No. 1 at 5.

Scaperotta fails to identify any of the prison officials who allegedly took away his wheelchair, moved him to a cell where he had to sleep on the floor,  and did not provide him with a water bottle, second mattress, and a second pillow.  *See* ECF No. 1 at 5.  Nor does he identify the prison officials who allegedly denied his various requests for accommodations during his initial incarceration at the KCCC. *See id.*  He also fails to identify the prison officials who allegedly denied him an

accessible bathroom and shower, and other "special [accommodations]" during his subsequent incarceration at the KCCC. *See* ECF No. 12 at 1.

Moreover, Scaperotta fails to allege that any prison official was deliberately indifferent to his various needs. *See* ECF No. 1 at 5; ECF No. 12 at 1. On the one occasion Scaperotta showed a prison official the memo stating that he was authorized to use a wheelchair, the prison official provided him one. ECF No. 1 at 5. Scaperotta does not allege that he told any other prison official about his various needs. Scaperotta fails therefore to allege a plausible Eighth Amendment conditions-of-confinement claim.

### 5.    Eighth Amendment—Denial of Medical Care

Scaperotta briefly alleges that he "asked for medical attention [and] treatment," but he received "no examination or treatment." ECF No. 1 at 5.

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "This includes both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted).

To meet the objective element, a plaintiff must demonstrate the existence of a serious medical need. *See Estelle*, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted). Regarding the subjective element, a prison official is deliberately indifferent only if the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks and citation omitted). This "requires more than ordinary lack of due care." *Farmer*, 511 U.S. at 835 (internal quotation marks and citation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Scaperotta does not say who he allegedly asked for medical care, what he told them, when he did so, and how they responded. *See* ECF No. 1 at 5. Without this basic information, Scaperotta fails to state a plausible Eight Amendment claim based on the medical care he received during his initial incarceration at the KCCC.

### 6.      First Amendment

Scaperotta claims that prison officials violated the First Amendment[7] by not

forwarding his mail from the KCCC to the OCCC.[8]  ECF No. 1 at 6.  He also

claims that Wagatsuma did not allow "Bibles, Religious Magazines, [or] Books" to

be mailed into the KCCC.  *Id.*

### a.      Forwarding Mail

"[A] prison inmate retains those First Amendment rights that are not

inconsistent with his status as a prisoner or with the legitimate penological

objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Prison inmates have "a First Amendment right to send and receive mail."

*Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (internal quotation marks

and citations omitted).  A prison may adopt regulations or practices for incoming

---

[7]  Although Scaperotta also cites the Sixth and Eighth Amendments, ECF No. 1 at
6, the rights of criminal defendants guaranteed by those amendments do not appear
to have any relevance here.

[8]  At one point, Scaperotta suggests that unidentified prison officials in the
mailroom allowed inmates to scan, check, and read other inmates' outgoing mail.
ECF No. 1 at 6.  These allegations, however, bear no apparent connection to
Scaperotta's claims based on his alleged medical conditions.  Nor are they directed
against Wagatsuma.  Any such claims are DISMISSED without prejudice and must
either be connected to his other claims in an amended complaint, or be
raised, if at all, in a separate action or actions.  *See* Fed. R. Civ. P. 18, 20; *Char v.
Kaiser Hosp.*, Civ. No. 18-00345 JAO-RLP, 2019 WL 80890, at *3 (D. Haw. Jan.
2, 2019) ("Unrelated claims involving different defendants must be brought in
separate actions." (citations omitted)).

mail which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989)).

Scaperotta claims that two days before his transfer from the KCCC to the OCCC, he requested from his financial institution a cashier's check for deposit to his inmate account. ECF No. 1 at 6. Although Scaperotta claims that "no one" at the KCCC would mail the check to him at the OCCC or deposit it for him, he fails to allege who he asked to forward his mail, when he did so, and how they responded. Without this information, Scaperotta cannot state a plausible First Amendment claim based on the handling of his mail.

### b.   Religious Materials

"The right to exercise religious practices and beliefs does not terminate at the prison door, but a prisoner's right to free exercise of religion is necessarily limited by the fact of incarceration." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (internal quotation marks, citations, and brackets omitted). "To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be judged

under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotation marks and citation omitted). "The challenged conduct is valid if it is reasonably related to legitimate penological interests." *Id.* (internal quotation marks, citation, and footnote omitted).

Scaperotta alleges that Wagatsuma did not "allow Bibles, Religious Magazines, Books e[tc]. to be mailed in." ECF No. 1 at 6. Scaperotta further alleges that this "depriv[ed] [him] and God of fellowship" and caused his "mental health demise" resulting in his placement in the "mental health p[s]ych ward." *Id.*

The exact nature of Scaperotta's First Amendment claim against Wagatsuma is not entirely clear. If Scaperotta is naming Wagatsuma solely because of his supervisory position at the KCCC, that will not do. *See Starr*, 652 F.3d at 1207 (articulating standard for supervisory liability under 42 U.S.C. § 1983). If, alternatively, Scaperotta is claiming that Wagatsuma instituted or enforced a policy that prohibited all religious materials in the KCCC, he should say so. Scaperotta should also say if he ever attempted to obtain religious materials, when he did so, and the results of those efforts. If Scaperotta alleges a causal link between Wagatsuma and his inability to obtain any religious materials, his Free Exercise claim can proceed.

**B.      Claims under the ADA**

Scaperotta claims that prison officials at the KCCC violated the ADA.  ECF

No. 1 at 5; ECF No. 12 at 1.

Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA

defines "public entity" to include "any State or local government" and "any

department, agency, . . . or other instrumentality of a State."  42 U.S.C. § 12131(1).

The Supreme Court has held that the term includes state prisons.  *See Pa. Dep't of*

*Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Castle v. Eurofresh, Inc.*, 731 F.3d 901,

910 (9th Cir. 2013) ("Title II applies to the operation of state prisons." (citing *id.* at

213)).

As the Ninth Circuit has explained, "the ADA entitles inmates to receive the

'benefits' of the incarcerating institution's programs and services without facing

discrimination on account of a disability."  *Armstrong v. Schwarzenegger*, 622

F.3d 1058, 1069 (9th Cir. 2010); *see also* 28 C.F.R. pt. 35, app. A ("It is essential

that corrections systems fulfill their discrimination and program access obligations

by adequately addressing the needs of prisoners with disabilities, which include,

but are not limited to, proper medication and medical treatment, [and] accessible toilet and shower facilities[.]").

Title II authorizes suits by private citizens for money damages against public entities that violate 42 U.S.C. § 12132.  *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).  And the Ninth Circuit has concluded that "Title II abrogates a state's Eleventh Amendment immunity."[9]  *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012) (citations omitted); *see also Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004) (per curiam) ("Our precedent clearly commands the conclusion that the State is not entitled to Eleventh Amendment immunity under Title II of the ADA." (citations omitted)).

To prevail under Title II, the plaintiff must show that:  "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability."  *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (citation omitted).

---

[9]  "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA[.]"  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *see Okwu*, 682 F.3d at 844 ("In *Vinson*, we held that the remedial scheme of Title II of the ADA was comprehensive enough to foreclose § 1983 actions." (footnote and citation omitted)).

The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Major life activities" include walking, standing, and major bodily functions such as bowel and bladder functions.  42 U.S.C. § 12102(2).  The definition of "disability" is "construed in favor of broad coverage."  42 U.S.C. § 12101(4)(A).

To the extent Scaperotta alleges that he was authorized temporary use of a wheelchair in February 2020, and he asked to use a "handicapped shower," he does not  say what disability necessitated these accommodations.  *See* ECF No. 1 at 5.  Moreover, although Scaperotta claims that he was authorized to use a wheelchair for one month, he does not allege that his impairment was permanent.  As the Ninth Circuit has observed, "[s]everal courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA." *Sanders v Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (citations omitted).  Although Scaperotta alleges that there was an "indefin[ite]" restriction on his ability to sleep on a top bunk or on the floor, it is unclear whether the restriction was due to a disability, and whether that same disability is the reason for his need for a wheelchair and accessible shower.  If Scaperotta chooses to file an amended pleading, he must say why he required a wheelchair and accessible

shower, and why his impairment was more than temporary.  He must also say why he was not allowed to sleep on a top bunk or on the floor.  While Scaperotta alleges that he has a form of esophageal cancer, it is not evident why he would need to use a wheelchair or have access to an accessible shower.

To the extent Scaperotta alleges that he required an accessible bathroom because he could not move his bowels without handrails, it is also unclear if this was only a temporary condition.  Scaperotta does not allege that his impairment has continued after he returned to the KCCC.  Instead, he claims that upon returning to the KCCC, he needed the handrails to "get up" from the toilet, not to move his bowels.  ECF No. 12 at 1.  If Scaperotta amends his pleading, he must identify the non-temporary impairment that required his use of an accessible bathroom.

Scaperotta's ADA claims are DISMISSED with leave granted to amend.

## IV.  **LEAVE TO AMEND**

The Complaint is DISMISSED with partial leave granted to amend. Scaperotta may file a first amended complaint on or before **April 26, 2021** that attempts to cure the deficiencies in his claims.  Scaperotta may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint.  Claims that do not properly relate to his Complaint are subject to dismissal.

Scaperotta must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.1; LR10.4.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).  If Scaperotta fails to timely file a first amended complaint that cures the deficiencies in his claims, this action may be dismissed, and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).[10]

---

[10]  Section 1915 (g) bars a civil action by a prisoner proceeding in forma pauperis:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## V.  **CONCLUSION**

(1)  The Complaint is DISMISSED for failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

(2)  Scaperotta's 42 U.S.C. § 1983 claims for money damages against the Kauai Community Correctional Center and Warden Wagatsuma in his official capacity are DISMISSED with prejudice.

(3)  If Scaperotta decides to amend his 42 U.S.C. § 1983 claims for money damages, and he names a proper defendant or defendants, his claims must be permitted by either Fed. R. Civ. P. 18 or Fed. R. Civ. P. 20; any unrelated claims involving different defendants must be brought, if at all, in a separate action or actions.

(4)  Scaperotta's 42 U.S.C. § 1983 claims for injunctive relief are DISMISSSED as moot.

(5)  Scaperotta's ADA claims are DISMISSED with leave granted to amend.

(6)  Scaperotta may file an amended pleading that cures the deficiencies in his claims on or before **April 26, 2021**.

(7)  The Clerk is directed to send Scaperotta a blank prisoner civil rights complaint form so that he can comply with the directions in this Order if he chooses to amend his complaint.

(8)  If Scaperotta fails to timely amend his pleadings or is unable to cure the deficiencies in his claims this suit may be AUTOMATICALLY DISMISSED without further notice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 25, 2021.



Jill A. Otake
United States District Judge

*Scaperotta v. Wagatsuma, et al.*, Civil No. 20-00551 JAO-RT; ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND